IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:11-cv-00432-MR
[Criminal Case No. 3:06-cr-00085-MR-1]

THOMAS McCOY RICHARDSON, JR., )
                                                    )
        Petitioner,                                 )
                                                    )
        vs.                                         )        MEMORANDUM OF
                                                    )        DECISION AND ORDER
UNITED STATES OF AMERICA,                           )
                                                    )
        Respondent.                                 )
_____ )

THIS MATTER is before the Court on Petitioner's Motion under 28
U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Doc. 1];
Respondent's Answer to Petitioner's Motion [Doc. 17]; Respondent's
Motion for Summary Judgment [Doc. 19]; Petitioner's Response to
Respondent's Motion for Summary Judgment [Doc. 23]; Petitioner's Motion
for Summary Judgment [Doc. 24]; and Petitioner's Motion to Request
Status of Case. [Doc. 28].

I.      FACTUAL BACKGROUND

        A.      Offense Conduct and Charges against Petitioner

On October 24, 2006, Petitioner Thomas McCoy Richardson was
charged in a Superseding Bill of Indictment with two counts of knowingly

transporting and shipping child pornography by means of a computer, in violation of 18 U.S.C. §§ 2252A(a)(1) and (b)(2) and 2256(8)(A), and one count of possession of child pornography that had been transported in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(5). [Criminal Case No. 3:06cr85, Doc. 21: Superseding Bill of Indictment]. The charges against Petitioner stemmed from evidence gathered, in part, during the search of Petitioner's apartment on November 17, 2005, a search authorized by a search warrant obtained through an application and affidavit submitted by North Carolina State Bureau of Investigation Agent J. D. White. [Id., Doc. 25-1: Ex. A to Pet. Mot. to Suppress, filed 7/24/07 ("White Aff.")]. In the affidavit accompanying his search warrant application, Agent White stated that he had served as an agent with the State Bureau of Investigation ("SBI") for five-and-a-half years and had been in criminal justice for eight-and-a-half years before joining that agency. [Id., Doc. 25-1 at 3]. Agent White stated that he had received special training in child pornography, had participated in investigations of individuals suspected of distributing and receiving child pornography, and had participated in the execution of search warrants that had resulted in the seizure of child pornography. [Id., Doc. 25-1 at 3]. With respect to child pornography collectors, in general, Agent White stated that computers are

the preferred method of distribution of child pornography because they enable a collector to store images, sometimes thousands of images, in digital form on a single computer. [Id., Doc. 25-1 at 5-6]. Agent White stated further that the computer provides a high degree of anonymity and that "[i]ndividuals involved in the possession and transportation of child pornography rarely, if ever, dispose of their sexually explicit materials." [Id., Doc. 25-1 at 12]. According to Agent White, collectors often keep child pornography images in their residence or other secure location "to ensure convenient and ready access," and even if a computer file is deleted, a computer expert is still likely to be able to retrieve parts, or all, of such files. [Id.].

With respect to Petitioner, Agent White stated in his affidavit that on June 10, 2004, the National Center for Missing and Exploited Children ("NCMEC") received a complaint, via the Cyber Tipline, from internet service provider ("ISP") America Online, Inc. ("AOL"). [Id., Doc. 25-1 at 8]. AOL reported that it had discovered the transmission of an e-mail message that included an embedded or attached file containing an image of child pornography. [Id.]. The e-mail sender address was identified as knifeisland@aol.com, and AOL provided the uploaded image to NCMEC. [Id.]. A few weeks later, SBI Intelligence Analyst Karen Yoakum submitted

an administrative subpoena to AOL for the purpose of obtaining subscriber information related to "knifeisland." [Id.]. On August 2, 2004, AOL responded that "knifeisland" was associated with an internet account maintained by Thomas M. Richardson, later identified as Petitioner, at 2541 Pine View Land, Apartment H, in Gastonia, North Carolina. [Id.]. AOL also indicated that the screen name "tr2066" was also associated with the account. [Id.]. The account was terminated by AOL on June 10, 2004. [Id.]. On August 16, 2004, the information provided by NCMEC was forwarded to SBI Agent Lori Shank for investigation. [Id. at 9]. An inquiry with the United States Postal Service revealed that Petitioner no longer received mail at the Pine View Lane address and that no forwarding address was available. [Id.]. Agent Shank viewed the image associated with "knifeisland" and described it as depicting an adult white male engaged in genital to genital intercourse with a prepubescent female of approximately four to six years of age. [Id.].

About one year later, on September 2, 2005, NCMEC received a second complaint from AOL via the Cyber Tipline, reporting that that AOL had discovered the transmission of two e-mail messages, each of which contained an embedded or attached file depicting child pornography. [Id. at 9]. Agent White stated that he received the complaint and viewed the

uploaded image, which depicted a prepubescent white female performing oral sex on an adult white male. [Id.]. AOL reported that the images were uploaded by tr1029@aol.com, using a screen name "tr1029." [Id.]. SBI personnel issued an administrative subpoena to AOL for records related to tr1029@aol.com, and on September 23, 2005, AOL provided information to SBI indicating that the account was established by Thomas Richardson of 8508 Park Road in Charlotte, North Carolina on July 22, 2005, and was terminated by AOL on September 2, 2005. [Id. at 9-10].

Agent White stated in the affidavit that on September 30, 2005, SBI Intelligence Analyst Yoakum conducted an Accurint search for Thomas McCoy Richardson, Jr., the results of which indicated that his current address was 7805 Andover Woods Drive, Apartment 604, in Charlotte, North Carolina. [Id. at 10]. The search results also indicated that Petitioner had previously used the address of 8508 Park Road in Charlotte, which was the location of a UPS Store. [Id.]. The search provided Petitioner's driver's license number and showed that he had previously used the address of 2451 Pine View Lane, Apartment H, in Gastonia, the same address he used at the time the first complaint was received by NCMEC on June 10, 2005. [Id.].

Also on September 30, 2005, Intelligence Analyst Yoakum ran Petitioner's criminal history, which revealed that he had been arrested in Florence, South Carolina on October 17, 1995, for indecent exposure and was convicted of that offense on March 12, 1996.  [Id. at 11].  This criminal history search also indicated that Petitioner was arrested on December 4, 1995, also in Florence, South Carolina, for Lewd Act Upon a Child Under 14 and was ultimately convicted of Assault/Battery of a High and Aggravated Nature on March 12, 1996.  [Id. at 11-12].  As a result of these convictions, Petitioner was required to register as a sex offender in South Carolina and was placed on probation.  [Id.].

On October 21, 2005, a United States Postal Inspector confirmed that Petitioner received mail at the address on Andover Woods Drive, and a detective with the Charlotte-Mecklenburg Police Department confirmed on November 3, 2005, that Petitioner was leasing Apartment 604 at 7805 Andover Woods Drive.  [Id. at 10-11].  Agent White stated that on November 14, 2005, he searched the North Carolina Division of Motor Vehicles database and discovered that a driver's license for Petitioner was issued on November 3, 2005, listing an address of 7805 Andover Woods Drive, Apartment 604.  [Id. at 9].  The driver's license number associated with this address was the same driver's license number that was earlier

associated with the address of the UPS Store on Park Road in Charlotte. [Id. at 11].

The next day, on November 15, 2005, Agent White learned that Petitioner's October 17, 1995, arrest for indecent exposure resulted from Petitioner's "jerking" on his penis while walking through a Wal-Mart in Florence, South Carolina, while his December 4, 1995, arrest for Lewd Act Upon a Child Under 14 resulted from his grabbing the buttocks of a 12-year-old girl, also in the Florence, South Carolina Wal-Mart. [Id. at 11-12]. According to the victim in that incident, Petitioner made an obscene remark to her threatening criminal sexual conduct. [Id. at 12].

On the strength of Agent White's affidavit, a search warrant was issued, and on November 17, 2005, law enforcement officers went to Petitioner's residence to serve the warrant. [Id., Doc. 47 at 4: PSR]. Petitioner was not at home when the officers arrived, and they later located him at his place of employment. [Id.]. Petitioner agreed to return to his apartment with the officers and admitted that he had been sending child pornography by e-mail. [Id.]. Petitioner also admitted that he had viewed images of child pornography on at least one website and that he had viewed between 250 and 500 images, with the youngest child estimated to be five years old. [Id.]. A subsequent examination of Petitioner's computer

revealed approximately 28 images of child pornography and 21 videos.  [Id. at 5].  The images included depictions of adult males engaging in vaginal intercourse with girls aged six to nine, a boy approximately five years of age performing oral sex on an adult male, an adult male having anal sex with a six-year-old boy, and a girl between four and six years old masturbating with the words "slut and hurt me" written on her chest.  [Id.].

### B. Petitioner's Motion to Suppress and AOL's Motion to Quash Petitioner's Subpoena

On July 24, 2007, Petitioner filed a motion to suppress all evidence seized as a result of the search of his residence, as well as his statements, arguing that the search warrant was issued without probable cause to believe that evidence of a crime would be found at Petitioner's residence and that AOL, acting as an agent of the Government, violated his right to be free of unreasonable searches in their warrantless search of his e-mail communications.  [Id., Doc. 25: Pet. Mot. to Supp.].  On December 12, 2007, Petitioner issued a subpoena to AOL, seeking the production of "all records (including but not limited to emails, postal correspondence, minutes/notes of meetings, memoranda, and public relations material, and Congressional testimony) relating to AOL's coordination of effort training and/or strategic partnerships with all agencies of the United States

Department of Justice, the United States Postal Service, the Secret Service, [NCMEC], regarding the detection and reporting of child pornography content in emails and/or web browsing activities by AOL subscribers or on its network." [Id., Doc. 31-1: Ex. A to AOL's Mot. to Quash Subpoena].

On January 4, 2008, AOL filed a motion to quash the subpoena, asserting that AOL was not an agent of the Government and that the scope of the subpoena was unreasonable and oppressive. [Id., Doc. 31: AOL's Mot. to Quash Subpoena]. In support of its motion to quash, AOL submitted the declaration of John R. LoGalbo, Assistant General Counsel for AOL in the Public Safety and Criminal Investigations group. [Id., Doc. 31-2: Ex. B to AOL's Mot. to Quash Subpoena ("LoGalbo Aff.")]. Mr. LoGalbo stated in his declaration that he was familiar with various security systems employed by AOL and that among the tools employed by AOL to protect its systems were various scanning tools which use hash values to recognize certain files that "may be detrimental to AOL, its property and its clients." [Id., Doc. 31-2 at ¶¶ 3-4]. According to Mr. LoGalbo's affidavit, a hash value is a formula that assigns a value to a specific known file and, in that way, may be analogized to a fingerprint insofar as no two computer files share the same hash value. [Id. at ¶ 5].

Mr. LoGalbo explained that, in using a hash value, a scanning system "can scan numerous files and identify those files with the known hash value," isolating, removing, or quarantining that file from other files. [Id. at ¶¶ 5-6]. Mr. LoGalbo stated that one of the types of files commonly identified using hash values are files depicting child pornography and that "AOL's known hash set or value utilized for such purpose is based entirely on the identification of images of apparent child pornography from within AOL's files." [Id. at ¶ 6]. According to Mr. LoGalbo, the hash value "is not received from any other source, nor accepted from any other source, including governmental agencies." [Id.]. With respect to the scanning tool used by AOL to detect child pornography files, Mr. LoGalbo stated that AOL developed this tool, known as the Image Detection and Filtering Program ("IDFP") in 2002 "in order to protect its rights and property against lawbreakers [and] prevent the network from being used to carry or store contraband (i.e., illegal child pornography) . . . ." [LoGalbo Aff. at ¶ 7]. Mr. LoGalbo stated in his affidavit that AOL "does not engage in searches of the email or attachments of its users." [Id. at ¶ 9]. Rather, according to Mr. LoGalbo, AOL simply "screens the email traffic utilizing numerical values associated with known threats to its system, including computer viruses, worms, bots and contraband," taking appropriate measures to remove the

identified threats from its system and, in the case of child pornography, reporting it to NCMEC in accordance with federal law. [Id. at ¶¶ 8-9]. Regarding this case in particular, Mr. LoGalbo stated that "at no time did AOL or any of its agents obtain information from government law enforcement agents related to the hash values involved in this case" and that at no time had there been a request by law enforcement either to search Petitioner's e-mail for any purpose or to assist in the investigation of the case, other than to provide subscriber information through two administrative subpoenas and a preservation request. [Id. at ¶ 10].

On January 7, 2008, this Court, Magistrate Judge David C. Keesler presiding, conducted a hearing on Petitioner's motion to suppress and AOL's motion to quash the subpoena issued by Petitioner. During the hearing, AOL counsel argued in favor of its motion to quash, noting that the subpoena did not identify a time restriction with respect to the documents requested, nor had Petitioner shown that the documents it sought would be admissible under an exception to the hearsay rule. [Id., Doc. 69, Mot. to Quash and Suppress Hrg. Tr. at 11-12]. AOL counsel represented to the Court that, in any event, AOL did not have documents that would be responsive to the subpoena because Petitioner sought documents proving that AOL was acting as an agent of the Government and AOL was not

acting as such an agent. [Id. at 12]. AOL counsel also presented to the Court a copy of the online member agreement that was in effect when Petitioner established his accounts, asserting that under the terms of that agreement, Petitioner did not have a reasonable expectation of privacy in the hash values associated with the child pornography files he transmitted or received. [Id. at 16-19]. In response, Petitioner acknowledged that the subpoena was "very broad" and that Petitioner could "do a lot better for everybody's purposes," suggesting that the Court require AOL to disclose the names of AOL employees over the previous several years who had "managed . . . strategic relations in coordination with [the] federal agencies . . . listed in [Petitioner's] subpoena" and to tell Petitioner who those employees are and what they did. [Id. at 30-31]. Judge Keesler opined that the subpoena was "absurdly overbroad" and noted that Petitioner had "made no suggestion whatsoever about what language would be appropriate." [Id. at 45]. Petitioner then stated that if he could obtain the names of the individuals who had engaged in a "strategic relationship" with a Government agency, he could "craft subpoenas for those individuals," and the subpoenas would be more narrowly drafted. [Id. at 46-47].

The Court next heard arguments on Petitioner's motion to suppress. In addition to arguing that AOL acted as an agent of the Government,

Petitioner argued that the search warrant was not based on probable cause because the affidavit did not connect any criminal activity to the residence searched, nor did the affidavit address the issue of staleness. [Id. at 72-73]. Government counsel, in response, cited case law establishing that probable cause existed under similar circumstances and argued that under the terms of Petitioner's subscriber agreement, AOL reserved the right to pre-screen Petitioner's e-mails using a tool such as IDFP, such that Petitioner did not have a reasonable expectation of privacy in the hash values matched through such prescreening. [Id. at 77-78; 83-84].

On January 16, 2008, Judge Keesler entered an order granting AOL's motion to quash Petitioner's subpoena. [Id., Doc. 34: Order Granting AOL's Mot. to Quash]. In his order, Judge Keesler found that the subpoena was "unacceptably broad," rendering compliance unreasonable or oppressive and, as such, it "must be" quashed. [Id., Doc. 34 at 4]. Judge Keesler stated that he had considered a modification of the subpoena but that Petitioner failed to suggest a satisfactory alternative. [Id.].

The following day, on January 17, 2008, Judge Keesler entered a Memorandum and Recommendation, recommending that the Court deny Petitioner's motion to suppress. [Id., Doc. 35: Memorandum and Recommendation]. With respect to the sufficiency of the probable cause

supporting the search warrant, Judge Keesler stated that while the search warrant could have been strengthened with more specific information relating to the Andover Woods Drive apartment, the affidavit provided probable cause to search that location.  [Id., Doc. 35 at 5-6].  Judge Keesler noted that after receiving the latest complaint, communicated to NCMEC on September 2, 2005, the SBI "connected the dots" by September 30, 2005, revealing the links between Petitioner's e-mail accounts, his current and past addresses, and the 2004 complaint associated with Petitioner.  [Id. at 6].  Judge Keesler concluded that it was reasonable for law enforcement officers to search Petitioner's current address, rather than past addresses or his place of employment, and that the officers made "diligent and reasonably expeditious efforts to locate the [Petitioner] and the likely instrument of the alleged crime -- his computer." [Id.].  Judge Keesler also found that there was a "fair probability that the computer used by [Petitioner] for transmission of and storage of [child pornography] would be found in his residence."  [Id.].  Judge Keesler then found that even if probable cause were found to be lacking, the good faith exception to the warrant requirement, as established in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 104 S.Ct. 3405 (1984), applied to permit the admission of the evidence seized as a result of the search,

because the law enforcement officers were not reckless or dishonest and the warrant was issued by a senior resident superior court judge whose experience and judgment were reliable. [Id. at 8]. Finally, Judge Keesler found that AOL was not acting as an agent for the Government and that AOL's discovery of child pornography related to Petitioner "was the result of routine scanning the company conducts to recognize files that may be detrimental to AOL, its property and its clients." [Id. at 9]. Judge Keesler specifically found that the close connection between AOL and law enforcement agencies cited by Petitioner, including the employment by AOL of former federal and state law enforcement officials, AOL's participation in seminars and training conducted for law enforcement agencies, and AOL's participation in policy-making organizations directed at combating illegal activity on the Internet did not create an agency relationship. [Id. at 10].

On March 21, 2008, this Court adopted Judge Keesler's Memorandum and Recommendation and denied Petitioner's motion to suppress. [Id., Doc. 41: Order Denying Pet. Mot. to Suppress]. The Court found, consistent with Judge Keesler's recommended findings, that probable cause existed to support the issuance of the search warrant for Petitioner's apartment and held that because probable cause existed, the

Leon good faith exception did not need to be addressed. [Id., Doc. 41 at 4-5]. With respect to the motion to quash, the Court affirmed the granting of that motion and held that there was no evidence that AOL acted as an agent of the Government in routinely scanning files to ensure that its network is not used to further child pornography. [Id. at 6-7].

### C. Petitioner's Guilty Plea and Sentencing

On April 3, 2008, Petitioner entered into a plea agreement with the Government, pursuant to which he agreed to plead guilty to Counts Two and Three of the Superseding Bill of Indictment. [Id., Doc. 44: Plea Agreement]. Although Petitioner waived certain rights to challenge his conviction or sentence on appeal or during in a post-conviction action, he preserved his right to appeal the denial of his motion to suppress, the granting of AOL's motion to quash, and any finding by this Court that Petitioner had a qualifying prior conviction triggering the enhancement of the statutory range of imprisonment to a mandatory minimum of 15 years under 18 U.S.C. § 2252(b)(1) or to a mandatory minimum of 10 years under 18 U.S.C. § 2252(b)(2). [Id. at 5-6].

In preparation for Petitioner's sentencing hearing, the probation office submitted a Presentence Investigation Report (PSR). [Id., Doc. 47: PSR]. Finding a Total Offense Level of 32 and a Criminal History Category of I,

the probation officer calculated the that the Sentencing Guidelines range of imprisonment would be 121 to 151 months. [Id., Doc. 47 at 7-8; 13]. The probation officer also noted, however, that Petitioner was subject to a statutory mandatory minimum term of 15 years and a maximum of 40 years in prison for the transportation offense, see 18 U.S.C. § 2252A(a)(1) and (b)(1), and a statutory mandatory minimum of 10 and a maximum of 20 years for the possession offense, see id. § 2252A(a)(5) and (b)(2). [Id., Doc. 47 at 13]. These enhancements were based on Petitioner's prior conviction for Assault/Battery of a High and Aggravated Nature ("ABHAN"), which conviction resulted from Defendant's grabbing of the buttocks of a 12-year-old girl. See [Id. at 8]. Petitioner objected to this enhancement. Pursuant to USSG §5G1.1, this increased the Guideline Range applicable to Petitioner's sentencing to 180 months.

Petitioner's sentencing hearing was partially conducted and continued twice. Before his final sentencing hearing, the Government filed two exhibits relevant to the claims in Petitioner's pending motion to vacate. First, the Government filed a transcript of the March 16, 1996, South Carolina guilty plea proceeding that resulted in Petitioner's ABHAN conviction. [Id., Doc. No. 57: ABHAN Plea Transcript]. During the plea colloquy in the state court proceeding, Petitioner acknowledged that he had

been charged with ABHAN and indecent exposure and that he was guilty of both offenses.  [Id., Doc. No. 57 at 6].  The state court prosecutor recited the factual basis for Petitioner's plea, explaining to the Court that on December 14, 1994, Petitioner followed a 12-year-old girl down some aisles at a Wal-Mart store, and when the girl stopped to look at some stationery items, Petitioner came up behind her, grabbed her buttocks for several seconds, and told her that he would like to "F [her] any time."  [Id. at 9].  Although Wal-Mart security officers were not able to catch Defendant on that occasion, ten months later, on October 17, 1995, they caught him masturbating as he was pushing a cart through the store, and he was identified as the perpetrator of the assault on the 12-year-old.  [Id. at 10-11; 13].

Petitioner, who had at one time been a licensed attorney, was represented by his law partners during the state court hearing, and both partners told the court that Petitioner was "extremely remorseful" and was getting the counseling that he needed.  [Id. at 14-16].  Petitioner also addressed the court, acknowledging that he "realize[d] the Hell that [he had] put [his] family through" and that he had "an idea of the Hell that [he had] put the [victim's] family through," appreciating it "even more" after hearing the victim's parents speak.  [Id. at 16].  Petitioner acknowledged

that "[a] simple I am sorry or apology [would not] do it" but that he "tender[ed] it for what it [was] worth."  [Id.].  Finally, Petitioner acknowledged that he hurt many people as a result of his actions.  [Id.].  In addition to sentencing Petitioner to a ten-year term of imprisonment, the balance of which was suspended, the state court ordered Petitioner to register as a sex offender, to maintain a distance from all minor children, and to pay for the victim's counseling expenses.  [Id. at 20-21].

The second exhibit submitted by the Government before Petitioner's final sentencing hearing before this Court was the transcript of the August 19, 2005, hearing in the South Carolina Supreme Court before the Committee on Character and Fitness of the South Carolina State Bar, which was considering Petitioner's request that he be reinstated as a licensed attorney in the State of South Carolina.  [Id., Doc. No. 58: Reinstatement Hearing Transcript].  During the reinstatement hearing, Petitioner acknowledged that he had previously been angry with the victim because of the extensive counseling she had received, stating that "[i]t came as a shock to [him] that someone would need to go to treatment five or six or seven years after an incident."  [Id. at 42].  Petitioner explained to the committee, however, that he was no longer angry, understanding that the victim "would need to go speak to somebody."  [Id.].  Petitioner testified

that he did not know why he had committed the offenses in 1994 and 1995 but that he would never let it happen again. [Id. at 48-49]. Petitioner also admitted that, between 1994 and 1995, there had been approximately six occasions on which he had engaged in similar behavior but testified that he had the support network in place to prevent any such incidents from occurring in the future. [Id. at 52].

During Petitioner's sentencing hearing in this Court, Petitioner argued that his sentence could not be enhanced based on his prior conviction based on documents that were not conclusive court documents as described in the Supreme Court's decision in Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). [Id., Doc. 77 at 6-14: Sentencing Hrg. Tr.]. Petitioner argued further that the plea colloquy from Petitioner's guilty plea to the prior South Carolina conviction did not establish that he admitted to the facts that made clear that the offense involved sexual battery and that the record of Petitioner's administrative proceeding involving the reinstatement of his bar license did not satisfy Shepard. [Id. at 18-33].

Government counsel disagreed, arguing that the Court could consider Petitioner's testimony from the reinstatement hearing as a "comparable judicial record of the information regarding the prior conviction." [Id. at 33].

Government counsel noted, however, that the plea colloquy transcript was at least as helpful as the reinstatement hearing transcript because Petitioner never objected to the facts as recited by the prosecutor during that hearing, and those facts supported the court's imposition of sentence and requirement that Petitioner register as a sex offender and pay for the victim's counseling.  [Id. at 34-35].

In resolving Petitioner's objection to the enhancement, this Court first held that it would not consider the reinstatement hearing transcript to support the enhancement, noting that, while the reinstatement hearing may have arisen from the same event, it did not constitute a document of conviction related to the criminal charge.  [Id. at 38].  Turning to the plea colloquy, this Court held that Petitioner's admissions established a physical assault related to a minor and that the judgment, which was signed by Petitioner, established that the offense was sexual in nature, because it explicitly required that Petitioner register as a sex offender as a result of the ABHAN offense.  [Id. at 40-41].  Based on the plea colloquy transcript and the judgment, the Court held that Shepard-approved documents established that Petitioner committed the child pornography offenses for which he was being sentenced after his conviction for an offense related to abusive sexual conduct involving a minor, triggering the higher mandatory

minimum and statutory maximum terms of imprisonment set forth in § 2252A(b)(1) and (b)(2). [Id.]. As a result, the Court found that Petitioner was subject to an applicable Sentencing Guidelines term of 180 months in prison, the applicable statutory mandatory minimum as to the transportation offense. Both parties agreed that, in light of the Court's overruling of Petitioner's objection, that this calculation was correct. [Id. at 44-45].

After hearing from Petitioner's family members, who argued in favor of leniency, the Court noted that, even if its overruling of Petitioner's objection were incorrect and Petitioner's applicable advisory Guidelines range were 121 to 151 months, the Court would nevertheless consider imposing an upward variance sentence based on the particular facts of the case and the 18 U.S.C. § 3553(a) sentencing factors. [Id. at 48-49]. The Court permitted both parties to argue in favor, or against, a sentence of 180 months, assuming the enhancement did not apply and Petitioner faced a Guidelines range of 121 to 151 months. [Id.].

In response, Petitioner argued that a 180-month sentence was not warranted, while Government counsel argued that a sentence of 240 months was appropriate. [Id. at 65-78]. Although Government counsel acknowledged that she had filed a brief arguing in favor of a 180-month sentence a month earlier, she explained to the Court that she had changed

her mind about the appropriate sentence after further consideration and consultation. [Id. at 73]. During this colloquy, Petitioner's counsel noted that there had been extensive negotiations during the plea bargaining process, with Government counsel at one point being required by her supervisor to make a particular concession, after which she sent an e-mail to Petitioner's counsel stating that Petitioner "had better hope that [she] had forgotten all about [the conflict] by the time of sentencing." [Id. at 79-81]. Petitioner's counsel suggested that Government counsel's decision to pursue a longer sentence was related to her frustration about his case, in response to which Government counsel explained that she had agreed with her supervisor's decision during the plea-bargaining process and that her e-mail statement was made out of frustration with Petitioner's continuous push for concessions. [Id. at 80-81; 84-85]. Government counsel stated that her arguments in favor of a 240-month sentence had all been "talked about" with Petitioner's counsel before and that Petitioner's counsel's implications that she had done anything wrong or unprofessional were false. [Id. at 85].

The Court then permitted Petitioner to allocute, after which the Court stated that, regardless of whether the statutory mandatory minimum of 180 months applied in this case, the Court would impose a sentence of 180

months, because that sentence was the appropriate sentence in light of the § 3553(a) factors, "particularly with regard to the seriousness of the offense and to afford an adequate deterrence for criminal conduct." [Id. at 92]. The Court then sentenced Petitioner to 180 months' imprisonment. [Id. at 93].

### D. Petitioner's Appeal and the Pending Motion to Vacate

Petitioner appealed, arguing that this Court erred in denying his motion to suppress, because AOL was acting as an agent of law enforcement under the statutory framework established by Congress and because the search warrant lacked a sufficient nexus to the place to be searched, such that no reasonable officer could have relied on it. Petitioner also argued that this Court erred in granting AOL's motion to quash the subpoena.

On June 11, 2010, in a published opinion, the Fourth Circuit affirmed this Court's judgment, holding that "[a]ssuming that AOL conducted a search within the meaning of the Fourth Amendment," its actions "did not equate to governmental conduct triggering constitutional protections," because "the statutory provision pursuant to which AOL reported [Petitioner's] activities did not effectively convert AOL into an agent of the Government for Fourth Amendment purposes." United States v. Richardson, 607 F.3d 357, 364, 367 (4th Cir. 2010).

Turning to this Court's decision to quash the subpoena issued by Petitioner to AOL, the court noted that a subpoena is not "intended to provide a means of pretrial discovery" and that a defendant must show that the material he has subpoenaed is relevant, admissible, and specific. Id. at 368. While acknowledging that the information Petitioner subpoenaed might be relevant, the Court concluded that the subpoena's lack of specificity made clear that Petitioner was using the subpoena for a fishing expedition, seeking to obtain any evidence "that might support his theory, as if he were in the discovery phase of a civil action." Id. Because Petitioner sought "to misuse the subpoena duces tecum as a discovery mechanism to develop his agency claim," the Fourth Circuit held that this Court acted within its discretion in quashing the subpoena. Id. at 368-69. Finally, the Court held that the search warrant was supported by probable cause, that it was not based on stale information, and that the affidavit established a sufficient nexus with the place to be searched. Id. at 370-71.

On September 1, 2011, Petitioner filed the pending motion to vacate his conviction and sentence, arguing that his trial counsel, Anthony G. Scheer, provided constitutionally ineffective assistance of counsel in (1) failing to issue a procedurally sufficient subpoena, causing Petitioner to lose his right to seek discovery and prove a dispositive defense; (2) failing

to document the terms of his agreement with the Government, angering Government counsel and resulting in a higher sentence for Petitioner; (3) failing to investigate and pursue defenses related to whether Petitioner possessed the images of child pornography that existed "only in the unallocated space" on his hard drive and whether the facts supported federal jurisdiction based on the offense involving interstate commerce; (4) failing to challenge the enhancement of Petitioner's sentence based on his prior misdemeanor conviction; and (5) failing to retain an expert to determine whether the child pornography images were actually possessed or whether Petitioner's computer could have been hacked, resulting in his inadvertent reception of those images. [Doc. 1 at 3-4; 6-8]. Petitioner also argues that his guilty plea was not entered knowingly because he was unaware of the defenses noted above; that Government counsel failed to act objectively and specifically sought to obtain unreliable information to use in support of a longer sentence; that the facts admitted in the plea agreement could not sustain a conviction because Petitioner could not possess the images on the day he allegedly possessed them; and that the Court improperly relied on and enhanced Petitioner's sentence based on state disciplinary board findings regarding reinstatement of Petitioner's law

license, particularly findings regarding Petitioner's prior misdemeanor conviction in South Carolina for ABHAN.

Mr. Scheer submitted an affidavit in response to the claims of ineffective assistance of counsel. <u>See</u> [Doc. 17-1: Scheer Aff.]. First, observing that child pornography was discovered on Petitioner's computer *and that Petitioner confessed to his possession of those images*, Mr. Scheer notes in his affidavit that his discussions with Petitioner focused on whether the evidence had been seized illegally and could be suppressed. [Doc. 17-1 at ¶ 8]. With respect to the specificity requirement for the subpoena issued to AOL, Mr. Scheer states that he did not submit more specific, modified subpoenas requiring that AOL identify the managers who oversaw the company's relationships with law enforcement because he had proposed to narrow the original subpoena on the record at the hearing, and that narrowed scope had been rejected by the Court. [<u>Id.</u> at ¶¶ 12-15].

Turning to the plea agreement, Mr. Scheer states that, after the Government initially presented Petitioner with a proposed plea agreement in which Petitioner waived his right to appeal all legal issues except ineffective assistance of counsel and prosecutorial misconduct, counsel and Petitioner agreed that Petitioner should not plead guilty unless he could reserve his right to appeal this Court's denial of his motion to

suppress, the Court's order quashing Petitioner's subpoena to AOL, and the sentence if Petitioner's sentence was enhanced based on two prior South Carolina convictions. [Id. at ¶¶ 16-18]. According to Mr. Scheer, Government counsel agreed to those exceptions to the appeal waiver but resisted Petitioner's request that she also omit language permitting the Government to make substantive use of statements made during the plea colloquy notwithstanding Federal Rule of Evidence 410. [Id. at ¶¶ 20-21]. Mr. Scheer states that he then asked Government counsel to have her supervisor review her decision and that, after Government counsel's supervisor instructed her to omit the Rule 410 waiver, Government counsel told Mr. Scheer that Petitioner had "better hope that [she will] have forgotten [the issue] by the time of sentencing." [Id. at ¶ 22]. Although Petitioner encouraged Mr. Scheer to seek to have Government counsel removed from his case, Mr. Scheer "ultimately decided that it was not the appropriate strategic decision and declined to do so." [Id. at ¶ 25]. Mr. Scheer states that, even after Government counsel indicated that she would seek a 240-month sentence, notwithstanding her earlier statement that she would ask for a 15-year sentence, Mr. Scheer still declined to seek Government counsel's recusal. [Id. at ¶¶ 26-28].

With respect to his failure to argue the "unallocated space" defense or

challenge the district court's federal jurisdiction, Mr. Scheer states that he was not aware of the possibility of an "unallocated space" defense, but did not believe that an attack on the Court's jurisdiction based on interstate commerce would succeed. [Id. at ¶¶ 32-34]. Responding to Petitioner's argument that he should have retained an expert, Mr. Scheer states that, although he has employed forensic computer experts to assist in other criminal cases, he concluded that such an expert was not necessary in Petitioner's case and would not be helpful. [Id. at ¶¶ 39-41].

Finally, concerning his failure to raise the sentence enhancement on appeal, Mr. Scheer states that he discussed the issue with Petitioner, noting that he did not believe appealing that issue was the right choice because (1) this Court indicated that it would have sentenced Petitioner to 180 months in prison regardless of whether the enhanced mandatory minimum applied and (2) because appealing the issue would dilute Petitioner's stronger appellate arguments. [Id. at ¶ 37]. Mr. Scheer also states that he believes Petitioner agreed with that decision because it is Mr. Scheer's policy to include any issues on appeal that a defendant believes should be included and he did not include the sentencing issue in Petitioner's appeal. [Id. at ¶ 38].

On May 25, 2012, Respondent filed its Response and the pending Motion for Summary Judgment. [Docs. 17, 19]. On July 2, 2012, this Court entered an Order pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of his obligation to file a response to the Motion for Summary Judgment, and explaining the requirement that he present his own evidence by affidavit or unsworn declarations. [Doc. 22]. On July 16, 2012, Petitioner filed a Response to Respondent's Motion for Summary Judgment, as well as Petitioner's own Motion for Summary Judgment. [Docs. 23, 24].

## II.  STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a). The rule goes on to provide procedures for responding to a motion for summary judgment:

(c) Procedures.

(1) Supporting Factual Positions. A party asserting

that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.

(4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues of fact for trial.

Once the moving party has met that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Rather, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56).

## III. DISCUSSION

### A. Petitioner's Ineffective Assistance of Counsel Claims

To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by such constitutionally deficient representation. Strickland v. Washington, 466 U.S. 668, 687-92, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689, 104 S.Ct. 2052.

To demonstrate prejudice, Petitioner must show a probability that the alleged errors worked to his "<u>actual</u> and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>Murray v. Carrier</u>, 477 U.S. 478, 494, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (emphasis in original) (quoting <u>United States v. Frady</u>, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). Under these circumstances, Petitioner "bears the burden of proving <u>Strickland</u> prejudice." <u>Fields v. Attorney Gen. of Md.</u>, 956 F.2d 1290, 1297 (4th Cir. 1992) (citing <u>Hutchins v. Garrison</u>, 724 F.2d 1425, 1430-31 (4th Cir. 1983)). If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." <u>Fields</u>, 956 F.2d at 1297 (citing <u>Strickland</u>, 466 U.S. at 697, 106 S.Ct. 2052).

In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. <u>Sexton v. French</u>, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under . . . <u>Strickland</u> if the 'result of the proceeding was fundamentally unfair or unreliable.'" <u>Id.</u> (quoting <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)).

Counsel is presumed to be competent, and a petitioner seeking post-conviction relief bears a heavy burden to overcome this presumption. Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. Id.

### 1. Counsel's Failure to Issue a More Narrow Subpoena

Petitioner first argues that trial counsel rendered ineffective assistance of counsel by issuing a subpoena that was procedurally deficient thereby causing Petitioner to lose his right to seek discovery. As discussed above, AOL had the subpoena quashed on the basis that it was overly broad. The Fourth Circuit made clear on Petitioner's appeal that "the subpoena duces tecum is not intended to provide a means of pretrial discovery." Richardson, 607 F.3d at 368. Because subpoenas may not properly be used as a means of discovery, Petitioner's counsel cannot have rendered deficient representation that caused the loss of Petitioner's opportunity to seek discovery, even though the subpoena was found to be overly broad.

Furthermore, although counsel theoretically could have issued a subpoena seeking the identification of the AOL representatives who might have had more specific information about AOL's relationship to law enforcement investigations into child pornography, Petitioner has not

shown that any subpoena would have yielded evidence that could have resulted in the suppression of the evidence seized from Petitioner's home. On direct appeal, the Fourth Circuit rejected Petitioner's argument that AOL was acting as an agent for the Government. Petitioner has simply not produced evidence that <u>any</u> subpoena would have changed the outcome of Petitioner's case. Accordingly, this claim fails.

### 2. Counsel's Failure to Document Plea Agreement Negotiations

Petitioner next asserts that his counsel failed to document adequately his plea negotiations with Government counsel, such that the Government ultimately argued in favor of a higher sentence than the AUSA had agreed was appropriate during the plea negotiation process. This argument is without merit. Although Mr. Scheer's (Petitioner's counsel's) affidavit corroborates Petitioner's assertion that Government counsel grew frustrated with Petitioner during the plea negotiation process, and while Government counsel admitted to having made the comment during a moment of frustration, Mr. Scheer asserts that "[t]here were no oral promises from the Government outside of the explicit conditions of the plea agreement." [Doc. 17-1 at ¶ 24]. Indeed, there is no evidence in the record of any such agreements that Mr. Scheer failed to document. Even if there

had been, this Court's conclusion that Petitioner was properly subject to the 15-year mandatory minimum set forth in § 2252A(b)(1) determined his sentence -- thus, no agreement of the parties could have resulted in a sentence below the sentence required by § 2252A. Having shown neither deficient representation nor prejudice, this second claim fails.

### 3. Counsel's Failure to Argue Relevant Defenses

Petitioner next argues that counsel failed to investigate and argue the "unallocated space" defense and to challenge this Court's federal jurisdiction based on the lack of interstate commerce. With respect to the "unallocated space" defense, Petitioner relies on the Ninth Circuit's decision in United States v. Flyer, 633 F.3d 911 (9th Cir. 2011), in which the court held that insufficient evidence existed to support the defendant's conviction for possession of child pornography, where the images were all located in space on the hard drive that contained only deleted data that could not be seen or accessed by the user without the use of forensic software, and where it was impossible to know when the file was originally created, accessed, or deleted by the user. Id. at 919; but see United States v. Shiver, 305 F. App'x 640 (11th Cir. 2008) (unpublished) (rejecting the "unallocated space" defense).

Even if this Court were to agree with Petitioner that images stored in unallocated space are not possessed for purposes of § 2252A, Petitioner's claim of ineffective assistance of counsel fails.  Petitioner here expressly admitted to the possession of child pornography, telling agents on the day of his arrest that he had viewed between 250 and 500 images of child pornography on his computer, that he received and sent child pornography via email, and that he had deleted the child pornography from his computer just a few days before his computer was seized.  Even if the images were in the unallocated space of Petitioner's computer on the date it was seized as a result of his having deleted them several days earlier, Petitioner's confession establishes that he possessed child pornography, and there is no reasonable probability that the assertion of the unallocated space defense would have resulted in his acquittal.

Next, as to Petitioner's contention that counsel should have argued that Petitioner's conduct was not in "interstate commerce," Petitioner has not shown that counsel could have successfully challenged the jurisdictional element of interstate commerce in this case.  In sum, Petitioner has not shown either deficient representation in Mr. Scheer's

failure to challenge jurisdiction or a reasonable probability that such a challenge would have succeeded.[1]

### 4. Counsel's Failure to Hire a Forensic Computer Expert

Finally, with respect to trial counsel's representation, Petitioner argues that Mr. Scheer should have hired an expert to determine whether the child pornography images found on Petitioner's computer were actually possessed and to identify how third parties can hijack a computer or how a user could inadvertently receive such images. In response, Mr. Scheer makes clear in his affidavit that he considered whether retaining an expert would be helpful, noting that he has employed forensic computer experts in other cases and that he consulted with his law partners, as well as other criminal defense experts, in deciding on the best strategy for defending Petitioner. [Doc. 17-1 at ¶¶ 39-42]. Petitioner, however, admitted that he had possessed child pornography -- that he had both sent and received such images by e-mail -- and that he had sent "pretty bad stuff" showing children between the ages of 10 and 12. [Criminal Case No. 3:06cr85, Doc. 47 at 4: PSR]. Petitioner also admitted that he had deleted child pornography just a few days before his computer was seized. Since

---

[1] Because Petitioner has not shown that attorney Scheer failed to advise him of any defense that was reasonably likely to result in his acquittal, his claim that his guilty plea was unknowing because he was not aware of such defenses also fails.

Petitioner admitted to possessing and keeping child pornography on his computer, Mr. Scheer had no reason to hire an expert in an attempt to show that Petitioner had not possessed child pornography. Counsel's alternative strategy of challenging the seizure of the evidence was reasonable, and Petitioner cannot, therefore, show either deficient representation or a reasonable probability of a different result.

### 5. Counsel's Failure to Challenge 15-year Mandatory Minimum on Appeal

With respect to Mr. Scheer as Petitioner's appellate counsel, Petitioner argues that counsel provided deficient representation in failing to argue on appeal that this Court erred in relying on the record of the South Carolina bar reinstatement hearing in applying the recidivist enhancement set forth in § 2252A(b)(1). Petitioner's argument fails, as this Court made clear that, even if it had not applied the recidivist enhancement, it still would have imposed the same sentence based on its application and consideration of the § 3553(a) sentencing factors. Additionally, as noted, in applying the enhancement, this Court refused to consider the transcript of Petitioner's reinstatement hearing before the South Carolina State Bar Committee on Character and Fitness. The Court relied, instead, on Petitioner's admissions and lack of objection to the prosecutor's recitation

of the facts of his prior conviction set forth in the transcript of his plea colloquy from that conviction, as well as the South Carolina state court judgment in which the court required that Petitioner register as a sex offender. See Shepard, 655 U.S. at 26, 125 S.Ct. 1254 (the plea colloquy transcript and judgment may properly be considered in determining the nature of a defendant's prior conviction); United States v. Boykin, 669 F.3d 467, 469 (4th Cir. 2012). Thus, any challenge to the application of the enhancement under Shepard and its progeny would have failed.

Counsel is permitted wide latitude in determining which claims are most likely to succeed on appeal and are therefore worth asserting. See Jones v. Barnes, 463 U.S. 745, 751-54, 103 S.Ct. 3308, 77 L.Ed.2d 987; Fisher v. Lee, 215 F.3d 438, 457 (4th Cir. 2000). Counsel is not required to assert all non-frivolous issues on appeal. See Jones, 463 U.S. at 751-52, 103 S.Ct. 3308. Here, Mr. Scheer challenged the denial of Petitioner's motion to suppress and the quashing of Petitioner's subpoena to AOL, arguing *inter alia* that AOL was acting as a government actor when it screened Petitioner's e-mail for child pornography. These issues garnered sufficient attention from the Fourth Circuit that it heard oral argument in the case and issued a published opinion, supporting Mr. Scheer's judgment that the issues he presented were sufficiently close to merit their inclusion

in Petitioner's brief on appeal. In sum, Petitioner's claim of ineffective assistance of appellate counsel fails.

### B. Petitioner's Claim of Prosecutorial Misconduct

To prove prosecutorial misconduct, the defendant must show that (1) the prosecutor's conduct was improper and (2) that such conduct prejudicially affected his substantial rights so as to deprive him of a fair trial. United States v. Scheetz, 293 F.3d 175, 185 (4th Cir. 2002); United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993). Here, Petitioner alleges that Government counsel was angered by her perception that Petitioner and Mr. Scheer were attacking her integrity or ethical standards and that she therefore lost her objectivity and decided to seek a longer sentence than she had originally sought. For the following reasons, Petitioner has not shown either prong of his claim of prosecutorial misconduct.

Government counsel admitted during Petitioner's sentencing hearing that she became frustrated with Petitioner during the plea negotiation process and that she sent Petitioner's counsel an email shortly thereafter expressing that frustration. This Court agrees with Petitioner that Government counsel should not have suggested that negative sentencing consequences could result from Petitioner's pressing for concessions during the plea bargaining process. Government counsel, however, made

clear that her sentencing advocacy and her decision to request a 240-month sentence was based on her analysis of the § 3553(a) factors and her judgment of a fair sentence in Petitioner's case, not on her frustration with Petitioner stemming from the plea-negotiation process. That Government counsel was not motivated to seek a higher sentence as a result of her frustration with Petitioner is supported by the fact that she initially sought a 180-month sentence that Petitioner's counsel ultimately conceded may be appropriate, but requested a 240-month sentence after consulting further with other attorneys within the United States Attorney's Office and reaching the conclusion that Petitioner's conduct warranted a 20-year sentence. There is no evidence of any dispute between the Government's attorney and the Petitioner or his counsel from the time the Government recommended the 180-month sentence and the time it advocated the 240-month sentence instead. Nor is there any evidence that counsel's decision was motivated by anything other than what she said it was: her honest reconsideration of the most appropriate sentence based on the facts of the case, not any inappropriate animosity toward the defendant. Even if Government counsel had argued in favor of a higher sentence as a result of her frustration with Petitioner, however, Petitioner cannot show that counsel's sentencing advocacy affected his substantial

rights, because the sentence he received was five years shorter than that sought by Government counsel and this Court made clear that it believed Petitioner's 180-month sentence to be warranted in light of the § 3553(a) sentencing factors.

With respect to Petitioner's assertion that Government counsel went "out of her way to obtain unreliable information" to support the application of the § 2252A(b)(1) sentence enhancement, [Mem. Supp. Pet. Mot. to Vacate at 5], there is nothing unreliable about a transcript of a reinstatement hearing in the South Carolina Supreme Court during which Petitioner testified under oath.  Government counsel acted appropriately in obtaining the transcript and in offering it to this Court for its consideration. Ultimately, however, because this Court did not consider that transcript, Petitioner cannot show that Government counsel's submission of the transcript resulted in a higher sentence, even if that submission had been inappropriate.

### C.    Petitioner's Remaining Claims -- Procedural Bar or Waiver

As a general rule, a claim of error that was not raised on direct appeal is procedurally defaulted and is not cognizable on collateral review, because "[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal."  Bousley v. United States, 523 U.S.

614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (internal quotations and citations omitted); see also United States v. Pettiford, 612 F.3d 270, 279 n.7 (4th Cir. 2010) (recognizing that claim challenging predicate offenses for purposes of defendant's classification as an armed career criminal was procedurally defaulted based on defendant's failure to challenge those predicates in the district court or on appeal, unless defendant can establish exception to procedural bar). Where a defendant has procedurally defaulted a claim by failing to raise it on direct appeal, the claim is cognizable in post-conviction proceedings "only if the defendant can first demonstrate either 'cause' and actual 'prejudice' . . . or that he is 'actually innocent.'" Bousley, 523 U.S. at 622, 118 S.Ct. 1604 (citations omitted). In order to show "cause" for a procedural default, the defendant must demonstrate that some objective factor external to the record impeded his counsel's efforts to present the claim on direct appeal. Murray v. Carrier, 477 U.S. 478, 497, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); Turner v. Jabe, 58 F.3d 924, 927 (4th Cir. 1995). It is not enough that counsel failed to present an argument that was unlikely to succeed; rather, cause only exists based on counsel's failure to present the claim if the claim "is so novel that its legal basis is not reasonably available to counsel." Bousley, 523 U.S. at 622, 118 S.Ct. 1604 (quoting Reed v. Ross, 468 U.S. 1, 16, 104 S.Ct.

2901, 82 L.Ed.2d 1 (1984)).

In order to establish "actual prejudice," the defendant must show "not merely that the errors at his trial create[d] a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  United States v. Frady, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (emphases in original).  In attempting to avoid a procedural default based on the "actual innocence" exception to the default, a defendant must show, by clear and convincing evidence, United States v. Mikalajunas, 186 F.3d 490, 494 (4th Cir. 1999), that it is more likely than not that no reasonable juror would have convicted him because of his "factual innocence, not mere legal insufficiency," Bousley, 523 U.S. at 623, 118 S.Ct. 1604.

Here, Petitioner argues that he is factually innocent of the possession offense because the child pornography images he was charged with possessing were inaccessible to him on November 17, 2005.  Other than making this conclusory assertion, Petitioner has not produced any evidence establishing that he did not possess the images at issue.  Rather, he appears to be suggesting that the images were in the "unallocated" space of his computer, such that he could not be considered to be in possession of them.  This claim is procedurally barred because Petitioner did not make

this argument on direct appeal. Moreover, as set forth above, Petitioner's counsel did not provide deficient representation in declining to make this argument on appeal, nor can Petitioner show a reasonable probability that this argument would have succeeded. Thus, Petitioner has not shown either cause or prejudice excusing his default.

Petitioner's claim that this Court improperly considered the transcript from his bar reinstatement hearing in the Supreme Court of South Carolina is also procedurally barred. In any event, as the Court has already explained, this Court explicitly declined to consider that transcript. Additionally, Petitioner never challenged its consideration on direct appeal, and he has shown neither cause nor prejudice excusing his default. Accordingly, this claim is dismissed as procedurally barred.

## IV.    CONCLUSION

For the reasons stated herein, the Court finds that Petitioner's claims in his Section 2255 motion are without merit and the Court will, therefore, grant summary judgment to Respondent. Thus, the Court will deny Petitioner's motion for summary judgment and dismiss his motion to vacate.

Finally, the Court finds that the Petitioner has not made a substantial showing of a denial of a constitutional right. See generally 28 U.S.C. §

2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong"). Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that his Motion to Vacate states a debatable claim of the denial of a constitutional right. Slack v. McDaniel, 529 U.S. 473, 484-85, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). As a result, the Court declines to issue a certificate of appealability. See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

## O R D E R

**IT IS, THEREFORE, ORDERED THAT** Respondent's Motion for Summary Judgment [Doc. 19] is **GRANTED**; Petitioner's Motion for Summary Judgment [Doc. 24] is **DENIED**; and Petitioner's § 2255 Motion to Vacate [Doc. 1] is **DENIED** and **DISMISSED**.

**IT IS FURTHER ORDERED** that Petitioner's Motion to Request Status of Case [Doc. 28] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules

Governing Section 2255 Cases, the court declines to issue a certificate of appealability.

   **IT IS SO ORDERED.**

Martin Reidinger
United States District Judge